IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OAK CREEK PLAZA, LLC, | ) | Appeal from the United States |
| | ) | Bankruptcy Court for the |
| Appellant, | ) | Northern District of Illinois, |
| | ) | Eastern Division, Case No. 16 B 16324 |
| v. | ) | |
| | ) | No. 16-cv-11705 |
| THRIVENT FINANCIAL FOR LUTHERANS, | ) | |
| | ) | Judge Andrea R. Wood |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

Appellant Oak Creek Plaza, LLC ("Oak Creek") has brought this appeal challenging a series of bankruptcy court orders concluding with the dismissal of Oak Creek's bankruptcy case. The central issue on appeal is the interpretation of the promissory note ("Note") between Oak Creek and Appellee Thrivent Financial for Lutherans ("Thrivent"). Oak Creek argues that the bankruptcy court decisions were erroneous because they were based on a mistaken interpretation the Note. Also before this Court is Oak Creek's motion for a stay pending appeal. (Dkt. No. 5.) For the reasons set forth below, the Court affirms the decisions of the bankruptcy court and denies the motion to stay the case pending appeal as moot.

**BACKGROUND**

In 2008, Oak Creek and Thrivent entered into an agreement for Thrivent to loan Oak Creek $6,300,000, which was memorialized by the Note and secured by a mortgage on property owned by Oak Creek. Oak Creek subsequently defaulted on the loan payments. As a result, in 2014, Thrivent filed a mortgage foreclosure action in the Circuit Court of Lake County, Illinois, captioned *Thrivent Financial for Lutherans v. Oak Creek Plaza, LLC et al.*, No. 14-CH-2522. In

the foreclosure case, the court entered a judgment in favor of Thrivent and a foreclosure sale was set for May 17, 2016.

But on May 13, 2016, Oak Creek filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, commencing the case captioned *In re Oak Creek Plaza, LLC*, No. 16 B 16324. Thrivent filed a claim against the bankruptcy estate for $9,675,934.18,[1] the amount Oak Creek allegedly owed under the Note. Thrivent also moved to dismiss the bankruptcy case and to lift the automatic stay of other proceedings under 11 U.S.C. § 362. Oak Creek then filed its first plan of reorganization and objected to the Thrivent claim. On October 13, 2016, the bankruptcy court agreed with Thrivent that the automatic stay should be lifted but postponed lifting the stay until November 10, 2016. Oak Creek modified its reorganization plan, but the bankruptcy court still proceeded with lifting the stay on November 10, 2016.

Shortly thereafter, Oak Creek modified its reorganization plan again and moved to have the automatic stay put back in place. This modified plan did not work out. So Oak Creek modified its reorganization plan one more time—this was the fourth and final plan Oak Creek filed in the bankruptcy case. On December 15, 2016, the bankruptcy court refused to confirm Oak Creek's final plan because it did not provide for a deficiency claim. The bankruptcy court also granted Thrivent's motion to dismiss, overruled Oak Creek's objections to Thrivent's claim, and refused to reinstate the automatic stay. On December 19, 2016, the bankruptcy court denied Oak Creek's emergency motion to reconsider the prior orders. This appeal followed. Meanwhile, Oak Creek's

---

[1] The claim consisted of a $5,299,416.33 principle balance, $41,601.16 of regular interest, $85,150.00 in late charges, $2,719,113.93 default interest on the principal balance, $1,551,997.00 in protective advances paid to the receiver, $170,427.50 in default interest on protective advances thru May 12, 2016, and $5,000.00 for a property condition inspection, less a $2,217.51 balance in reserve and $154,554.23 in periodic interest paid. Legal fees were to be determined. (*See, e.g.*, Dkt. No. 17-4 at 31.)

real estate property was sold in a Sheriff's sale in April 2017, where Thrivent's special purpose entity, Gold Ring Holdings, purchased the Property for $5,300,000.

## DISCUSSION

### I. Legal Standard

This appeal centers on the issue of the bankruptcy court's interpretation of the Note—in particular, how much Oak Creek owes under Section 29 of the Note. Issues of unambiguous contract interpretation involve conclusions of law and are reviewed *de novo*. *See HA-LO Indus., Inc. v. CenterPoint Properties Tr.*, 342 F.3d 794, 797 (7th Cir. 2003). But for an ambiguous contract, a more differential standard of review applies to the interpretation of the terms and factual findings—"[i]n cases of mixed questions of law and fact the standard is oftentimes clear error (or abuse of discretion), though plenary review may be used when certain factors indicate it is warranted or needed." *Platinum Tech., Inc. v. Fed. Ins. Co.*, 282 F.3d 927, 931 (7th Cir. 2002).

Oak Creek challenges the bankruptcy court's refusal to reinstate the automatic stay, decision to overrule Oak Creek's objection to Thrivent's claim, and dismissal of the bankruptcy case. The standards of review for these decisions are as follows. The bankruptcy court's decision regarding the automatic stay is reviewed for an abuse of discretion. *Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916 (7th Cir. 2003). For the decision to overrule Oak Creek's objection to Thrivent's claim, the bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004). Finally, a bankruptcy court has broad discretion under 11 U.S.C. § 1112(b) to dismiss a Chapter 11 case for cause—and decisions left to the discretion of the bankruptcy court are reviewed for an abuse of discretion. *See Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009) ("where the bankruptcy code commits a decision to the discretion of the

3

bankruptcy court, we review that decision only for an abuse of discretion"); *In the Matter of Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994) ("[a] bankruptcy court has broad discretion under 11 U.S.C. § 1112(b) to dismiss a Chapter 11 case for cause"); *see also Woodale Properties, Ltd. v. Am. Chartered Bank*, No. 16-cv-7026, 2017 WL 736892, at *4 (N.D. Ill. Feb. 24, 2017) (reviewing bankruptcy court's dismissal of the case under 11 U.S.C. § 1112(b) for abuse of discretion).

## II. Promissory Note Interpretation

Section 1 of the Note, titled "Agreement to Pay," states that Oak Creek "hereby agrees and promises to pay" Thrivent $6,300,000 "together with interest on the unpaid principal balance." (Ex. A to Mot. to Stay Pending Appeal at 1, Dkt. No. 5-1.) Section 28 of the Note, titled "Limited Recourse to Borrower," describes the circumstances under which the full recourse liability is abated to 25% as follows:

> a. Notwithstanding anything to the contrary contained in this Promissory Note, and subject to the provisions of Section 28(b) and Section 29 of this Promissory Note, Borrower's liability hereunder at any time shall be limited to an amount equal to twenty-five percent (25%) of all Amounts Owing To Lender, as hereinafter defined <u>less</u> all Credits, as hereinafter defined. For purposes hereof, the following terms shall have the meanings set forth below:
>
> i) The term "Amounts Owing to Lender" shall mean all principal, interest, Reinvestment Charges, late charges, costs, expenses and other sums due and owing to Lender at any time under the terms of this Promissory Note and the Loan Documents, including but not limited to (i) amounts which have been reduced to judgment against Borrower, and (ii) amounts which have been bid in at a foreclosure sale of the Premises to the extent such amount has not already been included in subsection (i) above; and
>
> ii) The term "Credits" shall equal the sum of (i) any portion of a judgment which has been paid in cash as opposed to being satisfied through a bid at a foreclosure sale of the Premises and (ii) any amounts bid in at a foreclosure sale in excess of seventy-five percent (75%) of all Amounts Owing to Lender.

4

(*Id.* at 8.) Section 28(b) then specifies that, "[i]n addition to the amounts set forth in Section 28(a) above and Section 29 hereof, and without being subject to the overall dollar limitations established therein, the Borrower shall also be personally liable for the payment to the Lender of:" (i) rents and profits collected by the Borrower after default, in excess of operating expenses; (ii) tenants' security deposits; (iii) prepaid rents; (iv) payments required under the separate Security Instrument; (v) insurance proceeds and condemnation awards; (vi) amounts necessary to satisfy mechanics' liens; (vii) damages due to waste of the property by the Borrower; (viii) losses due to the discharge of hazardous waste; (ix) damages due to fraud by the Borrower; (x) taxes and fees associated with transfer of title to the property; (xi) attorneys' fees and costs. (*Id.* at 9.) Finally, Section 29 of the Note, titled "Full Recourse," provides:

> Notwithstanding the provisions of Section 28 to the contrary, Borrower shall remain personally liable for the prompt payment of all sums owing hereunder, and any other sums due pursuant to the Loan Documents, including actual attorneys' fees and all other costs of collection, upon the occurrence of any of the following:
> . . .
> c. Borrower voluntarily files a petition or commences any case or proceeding under any provision or chapter of the United State Bankruptcy Code or any Principal, as defined below, files an involuntary petition against Borrower . . . .

(*Id.* at 10.) [2]

As discussed above, Oak Creek filed for bankruptcy. So, under Section 29, Oak Creek owes "all sums owing hereunder." The parties do not dispute this. Rather, the only issue Oak Creek raises on this appeal is the proper interpretation of the phrase "all sums owing hereunder."

---

[2] Oak Creek urges this Court not to consider the Note's headings because Section 31 states that headings should not affect the Note's interpretation; while Thrivent argues that the Court should consider the Note as a whole, which includes the headings. The Court need not choose sides in this dispute, however, as the headings add nothing to the interpretation of the Note. For example, the Court does not need to examine headings to determine that Section 28 describes limited recourse—the section's first paragraph clearly announces as much by stating that recourse "shall be limited." Likewise, Section 29 describes full recourse not because its heading says so, but because it states that "[n]otwithstanding the provisions of Section 28 to the contrary," which impose limited liability, Oak Creek "remain[s] [owing] . . . all sums owing hereunder." (Ex. A to Mot. to Stay Pending Appeal at 8, 10.)

5

The bankruptcy court determined that Oak Creek owed $9,675,934.18 to Thrivent under the Note, which, according to Oak Creek, can only be true if "all sums owing hereunder" is all "Amounts Owing to Lender" minus "Credits" (as defined in Section 28), plus the charges listed in Section 28(b). Oak Creek argues that this interpretation of the relevant Note provisions is incorrect and that it owes only the amount computed according to Section 28, which is 25% of "Amounts Owing to Lender" minus "Credits," plus 100% of the Section 28(b) charges.[3] (Appellant's Br. at 8–9, Dkt. No. 26.) According to Oak Creek, "all sums" in the phrase "all sums owing hereunder" means "all sums computed according to the terms of this Note"—and such computation is provided in Section 28. Oak Creek also argues that the Note is ambiguous and thus should be interpreted against its drafter, Thrivent. Meanwhile, Thrivent insists that the bankruptcy court's interpretation is proper because Section 1 of the Note states that Oak Creek "hereby agrees and promises to pay" the full amount, Section 28 specifies when this full recourse obligation is abated to 25%, and Section 29 reverts the libaility under the Note to its original state—full recourse. (Appellee's Br. at 11–13, Dkt. No. 28.)

When construing a contract under Illinois law, the Court's primary objective is to give effect to the intention of the parties. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011).[4] The Court must first look to the language of the contract itself to determine the parties' intent. *Id.* If the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. *Id.* But if the language of the contract is susceptible to more than one meaning, it is ambiguous and the Court can consider extrinsic evidence to determine the parties' intent. *Id.*

---

[3] In other words, Oak Creek does not dispute the bankruptcy court's determination that the full recourse amount would be $9,675,934.18. Rather, it argues that it does not owe the full recourse amount under the Note.

[4] Section 12 of the Note states that the Note should be governed and construed in accordance with the laws of the state where the property is located, which is Illinois. (Ex. A to Mot. to Stay Pending Appeal at 5, Dkt. No. 5-1.) The parties do not dispute that Illinois law controls the interpretation of the Note.

Moreover, ambiguous contractual language is generally construed against the drafter of the language. *Flora Bank & Tr. v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. App. Ct. 1991). Therefore, the threshold issue here is whether the Note is ambiguous.

In determining whether ambiguity exists, the Court must construe the contract as a whole, viewing each provision in light of the other provisions—the parties' intent is not determined by viewing contractual provisions in isolation. *Thompson*, 948 N.E.2d at 47. The contract is ambiguous only if it is "reasonably or fairly susceptible to having more than one meaning;" it is not ambiguous simply because the parties disagree on the meaning of its terms. *Id*. at 48. And it is not ambiguous "if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract." *Flora Bank & Tr.,* 583 N.E.2d at 725. Accordingly, the Court must consider whether there is more than one reasonable interpretation of the term "all sums owing hereunder."

Thrivent and the bankruptcy court's interpretation of Section 29 as providing for payment of the full recourse amount is the only reasonable interpretation here. The Note as a whole sets out a scheme under which Section 1 imposes liability for the full amount of the loan, Section 28(a) provides for a reduction to 25%, and Section 29 keeps the full recourse obligation in place if certain events occur (such as a bankruptcy filing). This is evident from multiple sections of the Note. To begin, Section 1 states that Oak Creek agrees to pay Thrivent $6,300,000 "together with interest on the unpaid principal balance." (Ex. A to Mot. to Stay Pending Appeal at 1, Dkt. No. 5-1.) Next, Section 28(a) sets up that, "subject to the provisions of Section 28(b) and Section 29," the liability "shall be limited" to 25% of "Amounts Owing to Lender" less "Credits," while Section 28(b) adds on certain amounts to this limited liability. (*Id.* at 8–10.) Finally, Section 29 states that "*[n]otwithstanding the provisions of Section 28 to the contrary*, Borrower shall

***remain*** personally liable for the prompt payment of all sums owing hereunder, and any other sums due pursuant to the Loan Documents, including actual attorneys' fees and all other costs of collection" if certain events, including bankruptcy, occur. (*Id.* at 10 (emphasis added).) This language clearly indicates that while Section 28 provides for the borrower's liability to be limited to 25%, the full liability imposed under the Note starting with Section 1 remains due under Section 29.

Moreover, Section 29—specifically, its language that "***[n]otwithstanding the provisions of Section 28 to the contrary***, Borrower shall ***remain*** personally liable for the prompt payment of all sums owing hereunder" —would make no sense if Section 29 does not impose full recourse liability but rather continues to impose the same reduced liability as Section 28. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) ("[a] court will not interpret a contract in a manner that would nullify or render provisions meaningless"). And there are other hints throughout the Note suggesting that "all sums owing hereunder" is not the limited, 25% recourse described in Section 28. For example, Section 28(a)(i) defines the term "Amounts Owing to Lender" as "***all*** principal, interest, Reinvestment Charges, late charges, costs, expenses and ***other sums due and owing*** to Lender at any time ***under the terms of this Promissory Note*** and the Loan Documents . . . ." (Ex. A to Mot. to Stay Pending Appeal 8–9 (emphasis added), Dkt. No. 5-1.) This language suggests that the sums owed under the Note (unless Section 28 applies) are not reduced to 25%, but rather include all principle, interest, etc. Likewise, Section 7 states that if a default event occurs, "***the entire unpaid principal balance*** together with accrued interest thereon at the respective rates provided for herein, the Reinvestment Charge, . . . and ***all other obligations arising under this Promissory Note*** or any of the Loan Documents, shall become . . . immediately due." (*Id.* at 3

8

(emphasis added).) This provision again suggests that the obligations under the Note include the entire unpaid principle balance (unless Section 28 applies), not its reduced portion.

There is no ambiguity here as Section 29 clearly imposes full recourse liability. Other interpretations, such as the one suggested by Oak Creek, are not reasonable in view of the Note's language discussed above. Therefore, the bankruptcy court was correct that Section 29 imposes full resource liability on Oak Creek. Hence, the bankruptcy court decisions are affirmed.[5]

## CONCLUSION

For the reasons stated above, the Court affirms the decision of the bankruptcy court and denies the motion for stay pending appeal as moot.

ENTERED:

Dated: September 27, 2017

_____

Andrea R. Wood
United States District Judge

---

[5] In light of the Court's ruling, there is no need to address Thrivent's arguments that the appeal is moot under the doctrine of pragmatic mootness or that 11 U.S.C. §111(b)(1)(A) ensures full recourse to a secured lender, such as Thrivent, regardless of the loan documents.